# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 12-CR-174 (SRN/SER)

       Plaintiff-Respondent,

      v.                                     **MEMORANDUM OPINION**
**AND ORDER**

Julian Ruiz Lozano,

       **Defendant-Petitioner**.

_____

Julie E. Allyn, United States Attorney's Office 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Plaintiff-Respondent

Julian Ruiz Lozano, Reg. No. 16557-041, U.S. Penitentiary – Marion, P.O. Box 1000, Marion, Illinois 62959, Pro Se
_____

SUSAN RICHARD NELSON, District Judge

      This matter is before the undersigned United States District Judge on Petitioner-Defendant Julian Ruiz Lozano's pro se motion pursuant to 28 U.S.C. § 2255 for an order of this Court to vacate, set aside, or correct his sentence.  (Doc. No. 29.)  On July 29, 2013, Petitioner-Defendant filed his pro se motion alleging: (1) ineffective assistance of counsel; and (2) that the Court should retroactively apply the recent Supreme Court

ruling in <u>Florida v. Jardines</u>, __ U.S. __, 133 S. Ct. 1409 (2013), to his case.[1]  The

Government opposes Petitioner-Defendant's motion.  (Govt.'s Resp. [Doc. No. 36].)

The Court permitted Petitioner-Defendant to file a reply to the Government's response

to his motion, which he did on September 23, 2013.  (Reply [Doc. No. 37].)

## I.    BACKGROUND

On February 23, 2012, a confidential informant ("CI") who had been inside

Petitioner-Defendant's Crystal, Minnesota apartment informed law enforcement officers

that Petitioner-Defendant was distributing large quantities of methamphetamine from his

apartment.  (Pretrial Sentencing Report ("PSR") ¶ 5.)  The CI had observed that

Petitioner-Defendant was in possession of large amounts of methamphetamine, a

handgun, and a "machine gun."  (<u>Id.</u>)   Within a few days of communicating with the CI,

a K9 officer from the Plymouth, Minnesota Police Department conducted a "K9 sniff" on

the exterior door of Petitioner-Defendant's apartment unit. (<u>Id.</u> at ¶ 6.)  The dog

positively alerted to the presence of a narcotic odor on the exterior door.  (<u>Id.</u>)

On March 6, 2012, officers obtained a search warrant for Petitioner-Defendant's

apartment.  (<u>Id.</u> at ¶ 7.)  Officers seized approximately 398.06 grams of

methamphetamine, a .357 revolver, $30,876 cash, a scale, packaging equipment, and

---

[1]    In its March 26, 2013 ruling in <u>Jardines,</u> the Supreme Court held that police
officers' use of a drug-sniffing dog on the front porch of a defendant's home, for
purposes of investigating an unverified tip of marijuana growing inside, constituted a
trespassory incursion on the "curtilage" of the house and was a "search" under the
Fourth Amendment.  133 S. Ct. at 1417-18.

drug notes.  (Id.)  Petitioner-Defendant was interviewed on August 14, 2012 at the

Sherburne County Jail, with counsel present.  (Id. at ¶10.)  During that interview,

Petitioner-Defendant admitted that he was in possession of large amounts of

methamphetamine and $30,000 cash, that he knew his conduct was wrong and accepted

responsibility for his actions, and that the firearm seized pursuant to the search of his

apartment was unloaded and did not belong to him.  (Id.)

Petitioner-Defendant was indicted in federal court on July 10, 2012 on a single

count of possession with intent to distribute fifty grams or more of methamphetamine in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (Indictment [Doc. No. 1].)

Petitioner-Defendant was represented by Allan Caplan throughout the proceedings in

federal court as well as state court, where the case was originally charged.  (Plea Hr'g

Tr. at 6 [Doc. No. 23].)   On August 6, 2013, prior to the filing of any pretrial

suppression motions, Petitioner-Defendant pleaded guilty to the single count against him.

(Plea Hr'g Minutes [Doc. No. 15]; Plea Hr'g Tr. at 23 [Doc. No. 34].)

At the outset of the change of plea hearing, the Court advised Petitioner-

Defendant that he should take care in answering the Court's questions and that he should

feel free to consult with his attorney at any point during the hearing.  (Plea Hr'g Tr. at 3

[Doc. No. 34].)  The Court also advised Petitioner-Defendant to ask for clarification if

he did not understand the Court's questions.  (Id.)  Petitioner-Defendant indicated that he

understood the Court.  (Id. at 3-4.)  In response to the Court's questions, Petitioner-

Defendant stated under oath that he had fully discussed the criminal charge with his counsel, had communicated his information to counsel, and was satisfied with the services that he had received from counsel. (<u>Id.</u> at 5-6.) Likewise, Mr. Caplan indicated that he had had time to investigate the law and facts of Petitioner-Defendant's case, believed that his client understood the charge against him and the range of punishment, and believed Petitioner-Defendant was competent to plead guilty. (<u>Id.</u> at 6.)

The Court further advised Petitioner-Defendant of the rights that he would relinquish by entering a plea of guilty. (<u>Id.</u> at 6-9.) The Court noted that prior to entering a plea of guilty, Petitioner-Defendant possessed the right to persist in his plea of not guilty, the right to a speedy trial, and the right to legal representation. (<u>Id.</u> at 6-7.) In addition, the Court explained the presumption of innocence at trial and the Government's burden of proof beyond a reasonable doubt, along with the right to confront witnesses and the right to testify, if he so desired. (<u>Id.</u> at 7-8.) Petitioner-Defendant indicated that he understood all of these rights. (<u>Id.</u>) The Court also advised Petitioner-Defendant that by entering a plea of guilty, he would also forego certain pretrial rights, including the right to file pretrial motions during which he would have "the right to challenge law enforcement and the manner in which you were arrested . . . ." (<u>Id.</u> at 9.) Petitioner-Defendant indicated that he understood this. (<u>Id.</u>) He also voiced his understanding that once he entered a guilty plea, he would be unable to withdraw it. (<u>Id.</u>) In response to the Court's questions, Petitioner-Defendant stated that he had read the Indictment,

understood it, and had discussed the charge in the Indictment with his attorney.  (<u>Id.</u>) Petitioner-Defendant also indicated his understanding of the possible statutory penalties for the charge, including a mandatory minimum of ten years' imprisonment to a maximum term of life imprisonment.  (<u>Id.</u> at 10.)

The Government then went through the provisions of the plea agreement ("Plea Agreement") on the record and likewise asked Petitioner-Defendant if he understood that he was waiving his rights to litigate pretrial motions.  (<u>Id.</u> at 12.)  Counsel for the Government further explained the possible statutory penalties for the charge.  (<u>Id.</u> at 12-13.)  Petitioner-Defendant replied that he understood.  (<u>Id.</u> at 12-17.)  When asked by the Court if anyone had made any promises to influence him to plead guilty, Petitioner-Defendant replied "no."  (<u>Id.</u> at 17.)

The Court advised Petitioner-Defendant that despite the Plea Agreement and any recommendations contained therein regarding sentencing, the agreement was not binding on the Court.  (<u>Id.</u>)  The Court indicated that the ultimate sentence would depend upon a number of factors, which the Court described.  (<u>Id.</u>)  Petitioner-Defendant stated that he understood.  (<u>Id.</u>)  In addition, the Court advised Petitioner-Defendant that if she imposed a sentence equal to or less than the highest imprisonment range based on his offense level and criminal history score, he would waive his right to appeal the sentence and collaterally attack it if he pleaded guilty.  (<u>Id.</u> at 19.)  Again, Petitioner-Defendant stated that he understood.  (<u>Id.</u>)

Thereafter, the Court further inquired into the factual basis for Petitioner-Defendant's plea.  (Id. at 20.)  Petitioner-Defendant admitted his guilt to several facts that established his guilt.  (Id.)  He also asked to confer with his counsel and did so.  (Id.)  Before accepting Petitioner-Defendant's plea, the Court again asked Petitioner-Defendant whether he was making the plea voluntarily and of his own free will.  (Id. at 22.)  He answered affirmatively.  (Id.)  Petitioner-Defendant answered "no" when asked if anyone had forced, coerced, threatened, or harmed him in order to influence him to plead guilty.  (Id. at 22-23.)  Rather, Defendant confirmed that he was pleading guilty because he was, in fact, guilty of the crime charged.  (Id. at 23.)  Defendant then entered a plea of guilty and signed the Plea Agreement.  (Id.)  Finding that Petitioner-Defendant's plea was "free, voluntary, knowing and informed, and supported by independent facts in the record establishing all of the elements of the offense," the Court accepted his plea.  (Id. at 23-24.)

In the Plea Agreement, Petitioner-Defendant acknowledged the statutory penalties for the offense, which carried a mandatory minimum sentence of ten years' imprisonment.  (Plea Agreement ¶ 4(a) [Doc. No. 16].)  While expressly noting the Court's sentencing discretion, the parties also acknowledged that if Petitioner-Defendant's offense level was 33, with a criminal history category of III, the applicable Sentencing Guideline range was 168-210 months.  (Id. at ¶ 4(f).)  In addition, Petitioner-Defendant waived his right to appeal any judgment of guilt and conviction.  (Id. ¶ 10.)

He also indicated that he understood his right to petition under 28 U.S.C. § 2255 and expressly waived that right. (Id.)

After the change of plea hearing, a probation officer prepared the PSR. The probation officer found that Petitioner-Defendant's total offense level was 33, his criminal history category was IV, and his Sentencing Guidelines range was 188-235 months in prison, with a ten-year statutory minimum sentence. (PSR at ¶¶ 19; 28; 51.) On November 5, 2013, the Court sentenced Petitioner-Defendant to a term of imprisonment of 188 months, at the bottom of the Sentencing Guidelines range. (Sentencing Tr. at 8 [Doc. No. 35]; Sentencing Judgment at 2 [Doc. No. 23].)

## II. DISCUSSION

### A. Standard for Relief

28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The Eighth Circuit has held that:

[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both

cause for the procedural default and actual prejudice resulting from the
error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir.1996) (citation omitted).

Alternatively, any procedural default can be excused if the defendant is actually

innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the

motion and the files of the case conclusively show that the prisoner is entitled to no

relief." 28 U.S.C. § 2255(b).  A petition can be dismissed without a hearing if : "(1) the

petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2)

the allegations cannot be accepted as true because they are contradicted by the record,

inherently incredible, or conclusions rather than statements of fact."  Engelen v. United

States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

In his § 2255 motion, Petitioner-Defendant presents three enumerated grounds for

relief.  Although two of his claims are framed slightly differently, they both concern

claims of ineffective assistance of counsel. (Motion at Grounds 2 & 3 [Doc. No. 29].)

The Court therefore considers Petitioner-Defendant to assert two claims – a claim of

ineffective assistance of counsel and a claim for the application of a new rule of law to

his case.   For the reasons discussed herein, Petitioner-Defendant's grounds of relief fail.


**B.**    **Waiver of Appeal**

As a threshold matter, Petitioner-Defendant explicitly waived his right to collateral review under 28 U.S.C. § 2255.  (Plea Agreement ¶ 10 [Doc. No. 16].)  In general, a defendant is permitted to waive his appellate rights in a plea agreement. United States v. Andis, 333 F.3d 886, 889 (8th Cir. 2003), cert. denied, 540 U.S. 997 (2003).   Before enforcing a waiver of appeal, the court must ensure that the following conditions are satisfied:  (1) the defendant knowingly and voluntarily entered the plea; and (2) the appeal falls within the scope of the waiver.   See United States v. Snelson, 555 F.3d 681, 685 (8th Cir. 2009).  Even if both conditions are met, a plea agreement waiver will not be enforced if doing so will result in a miscarriage of justice.  Id.   The government bears the burden of establishing these elements.  Id.  Any ambiguities in a waiver must be construed against the government.  United States v. Sisco, 576 F.3d 791, 795 (8th Cir. 2009).

Lozano's Plea Agreement states:

Defendant understands that 18 U.S.C. § 3742 affords Defendant the right to appeal the sentence imposed in this case.  Acknowledging this right, and in exchange for the concessions made by the United States in this Plea Agreement, Defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal Defendant's sentence if the Court imposes a sentence equal to or less than the highest imprisonment range based on his base offense level and criminal history score. . . .   Defendant also understands his rights to petition under 28 U.S.C. § 2255.  Defendant expressly waives his right to petition under 28 U.S.C. § 2255.  Defendant has discussed these rights with Defendant's attorney.  Defendant understands the rights being waived, and Defendant waives these rights knowingly, intelligently, and voluntarily.

(Plea Agreement ¶ 10 [Doc. No. 16]) (emphasis added).  As noted, the Court imposed a sentence of 188 months – a sentence at the lowest end of the Guidelines' advisory imprisonment range of 188-235 months based on Petitioner-Defendant's base offense level of 33 and ultimate criminal history score of IV.  See U.S. Sentencing Guidelines Manual ch. 5, pt. A, Sentencing Table (2012).  The record clearly demonstrates that Petitioner-Defendant's waiver of his right to appeal was knowing, intelligent, and voluntary.  (Plea Hr'g Tr. at 19; see also id. at 6; 9; 12-13; 17; 22.)  Not only did Petitioner-Defendant repeatedly evince his understanding of the Plea Agreement itself, he specifically voiced his understanding of the effects of the plea on his appellate rights. (Id. at 19; 22.)

The second area of inquiry requires the Court to consider whether the appeal falls within the scope of the waiver.  Snelson, 555 F.3d at 685.   Pursuant to the waiver of both his appellate rights and § 2255 relief,  Lozano forfeited any ineffective assistance claims that did not relate to the negotiation and entry of the Plea Agreement.  DeRoo v. United States, 223 F.3d 919, 924 (8th Cir. 2000) (finding that the "dismissal of a section 2255 motion on the basis of a waiver in the plea agreement is inappropriate when the defendant's claims of ineffective assistance relate to the negotiation of, and entry into the plea agreement and waiver.")   The Court finds that any claims of ineffective assistance of counsel unrelated to the negotiation and entry of the Plea Agreement fall within the scope of Petitioner-Defendant's waiver.

Moreover, as to these claims unrelated to the Plea Agreement and waiver, the Court finds that enforcement of the waiver does not constitute a miscarriage of justice. The Eighth Circuit has found the miscarriage of justice exception to be "an extremely narrow exception," satisfied in very limited circumstances, such as situations involving an illegal sentence, i.e., a sentence that is not authorized by law.  Andis, 333 F.3d at 891-92.  The facts of this case do not fit within the narrow parameters of the miscarriage of justice exception.

To the extent that Lozano argues that his waiver was not knowing, intelligent, and voluntary in light of an unanticipated change in the law based on Jardines, the Supreme Court has held that "absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."[2]  Brady v. United States, 397 U.S. 742, 757 (1970) (citation omitted). Discussing Brady in a subsequent opinion, the Supreme Court noted that the

_____

[2]  Petitioner-Defendant styles his first ground of relief as "NEW RULE OF LAW AND CONSTITUTIONAL SIGNIFICANCE SHALL STAND UNDER PRECEDENCE IN CERTIORARI FOR CONSIDERATION TOWARD RULING OF LEGAL INNOCENCE."  (Motion ¶ 12 [Doc. No. 29].)  As noted above, the Court construes this as a claim that in light of the ruling in Jardines, Petitioner-Defendant's plea was not knowing and voluntary.  To the extent that he attempts to assert a claim of "actual innocence," this doctrine is inapplicable here, as Petitioner-Defendant is not presenting new, reliable evidence of his innocence, or showing that, in light of new evidence, it is more likely than not that no reasonable juror would have convicted him.  See Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

defendant's plea in <u>Brady</u> was

> intelligent because, although later judicial decisions indicated that at the time of his plea he did not correctly assess every relevant factor entering into his decision, he was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him.

<u>Bousley v. United States</u>, 523 U.S. 614, 619 (1998) (internal quotation marks and citation omitted). The Eighth Circuit has likewise held that a defendant's guilty plea was valid notwithstanding a subsequent change in the applicable law. <u>United States v. Parsons</u>, 408 F.3d 519, 521 (2005). In <u>Parsons</u>, the Eighth Circuit considered the defendant's argument that the trial court committed a Sixth Amendment error in enhancing his sentence based on the amount of loss attributable to his money laundering crimes. <u>Id.</u> The appellate court rejected the defendant's argument because he had admitted to the amount of loss, and further concluded that "the development in the law announced by <u>Booker</u> subsequent to Parsons's guilty plea does not invalidate his plea." <u>Id.</u> (citing <u>Brady</u>, 397 U.S. at 757). The Eighth Circuit's holding is consistent with rulings on this issue from other federal circuit courts of appeal.[3]  Here, as noted in

_____

[3] <u>See</u>, <u>e.g.</u>, <u>United States v. Lee</u>, 523 F.3d 104, 107 (2d Cir. 2008) (finding that new Supreme Court precedent in <u>Kimbrough</u> regarding disparity in sentencing between crack and powder cocaine offenses did not invalidate defendant's waiver of right to appeal, as possibility of a change in the law after entering a plea was a risk accompanying defendant's plea); <u>United States v. Magana-Valencia</u>, 164 Fed. App'x 570, 571 (9th Cir. 2006) (holding that changes in sentencing law, post-<u>Booker</u>, did not render unintelligent or involuntary the defendant's waiver of right to appeal in his pre-<u>Booker</u> guilty plea); <u>United States v. White</u>, 129 Fed App'x 197, 204-05 (6th Cir. 2005) (holding that defendant's waiver of appeal rights constituted a waiver of any claim that

Bousley, 523 U.S. at 619, Petitioner-Defendant was advised by competent counsel, was in full control of his faculties, and engaged in a colloquy with the Court in which he indicated his understanding of the effect of waiver on his appellate rights. (See Plea Hr'g Tr. at 19; 22 [Doc. No. 34].) The unanticipated change in the law in Jardines does not make Petitioner-Defendant's waiver unenforceable.

In addition, the Court finds that Petitioner-Defendant's appeal of this issue falls within the broad scope of the waiver. See United States v. Killgo, 397 F.3d 628, 629, n.2 (stating, "The fact that Killgo did not anticipate the Blakely or Booker rulings does not place the issue outside the scope of his waiver.") Moreover, as with Petitioner-Defendant's ineffective assistance claim, the enforcement of the Plea Agreement waiver – a waiver to which Petitioner-Defendant knowingly and voluntarily agreed – does not fall within the narrow miscarriage of justice exception. Andis, 333 F.3d at 891-92.

---

resentencing was warranted in light of post-plea decision in Booker, and did not render plea agreement unknowing or involuntary); United States v. Williams, 141 Fed. App'x 112, 114 (4th Cir. 2005) (finding that waiver of right to appeal in pre-Booker plea agreement was a valid knowing, intelligent, and enforceable waiver); United States v. Porter, 405 F.3d 1136, 1144 (10th Cir. 2005) (stating, "Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations."), cert. denied, 546 U.S. 980 (2005); United States v. Sahlin, 399 F.3d 27, 31 n. 3 (1st Cir. 2005) (citing Brady for the proposition that a subsequent judicial decision changing the relevant sentencing law does not permit an attack on whether the plea was knowing."). While much of this precedent focuses on a change in sentencing law as opposed to the underlying substantive law – for which Petitioner-Defendant relies on Jardines – the principle remains the same – that an unanticipated subsequent change in the law is a risk inherent in accepting any plea agreement and does not render the guilty plea invalid.

Because this ground of appeal was subject to Petitioner-Defendant's waiver of appellate and § 2255 rights, the Court does not address it on the merits.

### C.    Ineffective Assistance of Counsel

As noted, to the extent that Petitioner-Defendant's ineffective assistance claim relates to the negotiation and entry of the Plea Agreement and waiver, the Court addresses only this portion of his ineffective assistance claim on the merits.  Petitioner-Defendant asserts that his attorney failed to file an appeal, made no objections, failed to challenge "the conditions of an illegal search without probable cause," "failed to challenge quantities or evidence," failed to "meet professional standards and practices" (Motion at 5-6, Ground 2 [Doc. No. 29]), failed to "negotiate a reasonable plea then proceeded to misrepresent the terms to Defendant, make false promises, and rush" gave "no formal explanation of the terms or conditions set forth in the Plea Agreement, and did not understand or comprehend the specific outcome."  (Id. at 8, Ground 3.)  In addition, he asserts that counsel "failed to initiate any formal collateral attack of enhancement directives," (id. at 24), "failed to counter any plea options," and "permitted the introduction of guideline ranges that did not match [the Indictment and supporting evidence]." (id.)  Regarding his claim of false promises, Petitioner-Defendant alleges that the false promises "included Defendant's anticipated terms of sentence that proved inaccurate, as well as failure to object to certain conditions" (id. at 7, Ground 3),  and that his counsel had "guaranteed that Petitioner-Defendant's final term of imprisonment

would not exceed 10 years." (<u>Id.</u> at 30.)

In order to obtain relief for ineffective assistance of counsel, Petitioner-Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). Petitioner-Defendant bears the burden of establishing to a reasonably probability that, but for his counsel's errors, the result of the proceeding would have been different. <u>Id.</u> This is a "heavy burden," <u>United States v. Apfel</u>, 97 F.3d 1074, 1076 (8th Cir. 1996), requiring a showing that the deficiency in counsel's performance was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. A defendant must show that counsel's errors were not the result of "reasonable professional judgment." <u>Id.</u> at 690. Moreover, a court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance. <u>Id.</u> A defendant must then show that the deficient performance actually prejudiced the outcome of the proceedings. <u>Id.</u> at 687.

Petitioner-Defendant fails to meet the heavy burden necessary to demonstrate that counsel provided ineffective assistance. His allegations are completely belied by his own sworn testimony at the plea hearing and his failure to raise any objections or concerns with counsel at the sentencing hearing. <u>See</u> <u>Nyugen v. United States</u>, 114 F.3d 699, 704 (8th Cir. 1997) (rejecting ineffective assistance claim as "flatly contradicted by

[the defendant's] contemporaneous statements at the plea hearing that he was 'satisfied with the representation [he had] received' and that he 'believed' that his counsel had 'been a good lawyer.'")  During the change of plea hearing, Petitioner-Defendant stated that he was satisfied with the services that he received from counsel.  (Plea Hr'g Tr. at 5-6 [Doc. No. 34].)  Petitioner-Defendant made clear that he had fully discussed the charge against him with counsel and told counsel everything that he wanted to convey to him. (Plea Hr'g Tr. at 5-6 [Doc. No. 34].)  Likewise, Petitioner-Defendant's counsel, Mr. Caplan, also indicated that he had had time to investigate the law and facts regarding the case, that he believed his client understood the charges against him and range of possible punishments, and that he believed his client was competent to plead guilty.  (Id. at 6.)  There is nothing in the record to support Petitioner-Defendant's generalized claim that his counsel "failed to meet standards and practices." (Motion at 5 [Doc. No. 29].)  To the contrary, the record shows that Petitioner-Defendant received representation from experienced, competent counsel.

Regarding Petitioner-Defendant's specific allegations of ineffective assistance, the allegation that Mr. Caplan failed to 'attack any enhancements' is likewise contradicted by the record.  Assuming that Petitioner-Defendant is referring to the application of a two-point enhancement for possession of a firearm (Plea Agreement ¶ 7(b)), defense counsel submitted a sentencing memorandum in which he argued against applying the firearm sentencing enhancement.  (Def.'s Sentencing Memorandum at 4

[Doc. No. 18].)  Defense counsel reiterated this argument at the sentencing hearing as well, advocating for a below-Guidelines sentence of ten years.  (Sentencing Tr. at 6 [Doc. No. 35].)  While the Court did not ultimately adopt this argument, defense counsel nonetheless ably advocated on Petitioner-Defendant's behalf.

The Court also rejects Petitioner-Defendant's claims of ineffective assistance due to counsel allegedly permitting the introduction of Guidelines ranges that did not match the Indictment and supporting evidence.  As noted, the PSR identified a Guidelines range of 188-235 months, based on a criminal history score of IV.  (PSR at ¶ 51.)  While the Plea Agreement contemplated a lower criminal history score of III, the Plea Agreement made clear that category III was a best estimate of Petitioner-Defendant's criminal history score at the time, stating,

> This does not constitute a stipulation, but a belief based on an assessment of the information currently known.  Defendant's actual criminal history may be higher and will be determined by the Court based on the information presented in the Presentence Report and by the Parties at the time of sentencing.  Defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the Defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement.  (U.S.S. G. § 4A1.1.)

(Plea Agreement ¶ 7(e).)  This Court considered the applicable offense level of 34, added a two-point firearms enhancement, but included a three-point reduction for acceptance of responsibility, to reach a total offense level of 33.  Petitioner-Defendant's

criminal history included a conviction for second degree murder for which he was certified as an adult at age 16, as well as a prior first degree drug possession conviction. (PSR at ¶¶ 24-25.) Because at the time he committed the instant offense, Petitioner-Defendant was on supervised release for his drug conviction, two additional points were added to his criminal history computation, to reach a total calculation of eight points. (Id. at ¶ 27.) According to the Guidelines, Petitioner-Defendant's criminal history score placed him in category IV. (Id. ¶ 28.) This Court sentenced Petitioner-Defendant at the very bottom of the 188-235 month range for criminal history category IV, providing detailed reasoning for doing so. (Sentencing Tr. at 11-13 [Doc. No. 35]; U.S. Sentencing Guidelines Manual ch. 5, pt. A, Sentencing Table (2012).) Under these facts, there is no basis for Petitioner-Defendant's claim that counsel was ineffective for failing to argue that the Guidelines ranges contained within the PSR failed to match the Indictment or the supporting evidence. When an attorney fails to perform acts "appearing to be futile or fruitless," the attorney's performance is not deficient. Garrett v. United States, 78 F.3d 1296, 1303 n. 11 (8th Cir. 1996), cert. denied, 519 U.S. 956 (1996). While defense counsel submitted colorable arguments regarding the two-point firearm enhancement and also asked the Court to consider Petitioner-Defendant's troubled, difficult upbringing (Def.'s Sentencing Mem. at 4-8 [Doc. No. 18]), any other argument relating to the Guidelines calculations would be futile or fruitless under the facts of this case. Counsel's conduct in this regard was not deficient.

18

The Court also rejects Petitioner-Defendant's claim that he was given no formal explanation of the terms or conditions in the Plea Agreement and failed to "understand or comprehend the specific outcome" of his plea.  (Motion at 7, Ground 3 [Doc. No. 29].)  He alleges that his counsel's inadequacy in this regard resulted in the missed opportunity for a jury trial.  (Id.)  There is absolutely no support in the record for Petitioner-Defendant's assertion.  During the change of plea hearing, Petitioner-Defendant stated that he had read the Plea Agreement and discussed it with his counsel.  (Plea Hr'g Tr. at 12 [Doc. No. 34].)  Mr. Caplan stated that he believed that Petitioner-Defendant understood the charge against him as well as the range of punishment.  (Id. at 6.)  In addition, the Government reviewed the contents of the Plea Agreement in detail.  (Id. at 12-17.)  Petitioner-Defendant acknowledged that Count One, possession with intent to distribute fifty or more grams of methamphetamine, carried a statutory maximum term of life imprisonment and a mandatory statutory minimum term of ten years' imprisonment.  (Id. at 13.)  He further acknowledged his understanding that while the Plea Agreement contained the parties' analysis of his potential sentence, his criminal history score might be different, and that the Court would ultimately make the sentencing decision.  (Id. at 16.)  The Court reiterated that the ultimate decision on sentencing rested with the Court and that the Plea Agreement was not binding on the Court.  (Id. at 17.)  Petitioner-Defendant acknowledged that he understood.  (Id. at 19.)  In addition, the Petitioner-Defendant expressly acknowledged his understanding that by entering a guilty plea, he

was relinquishing his right to trial, and all of the attendant rights associated with trial, including the right to confront witnesses. (Id. at 6-7.)

The Court thus finds no evidence that defense counsel's conduct with respect to the Plea Agreement fell below an objective standard of reasonableness, but even if it did, there is absolutely no evidence showing that but for counsel's alleged error, the result of the proceeding would have been different. Strickland, 466 U.S. at 688, 692. To the contrary, the record shows that independent of whatever counsel may have discussed with him, Petitioner-Defendant fully understood the terms of the Plea Agreement, as well as the possible outcome of sentencing.

As another ground for his ineffective assistance claim, Petitioner-Defendant argues that defense counsel "neglected his duties in failing to attempt evidentiary suppression, pre-sentence motions, and relevant objections. . . ." and that counsel failed to challenge "the conditions of an illegal search without probable cause," and "failed to challenge quantities or evidence." (Motion at 5-6; 24 [Doc. No. 29].) The Court need not address the merits of this ground of Petitioner-Defendant's ineffective assistance claim. As noted, Petitioner-Defendant explicitly acknowledged the waiver of his right to file pretrial motions by pleading guilty, both at the change of plea hearing (Plea Hr'g Tr. at 12-13 [Doc. No. 34]) and in the Plea Agreement itself.[4] (Plea Agreement ¶ 3.)

_____

[4] Even absent waiver, to the extent that Petitioner-Defendant claims that his counsel should have filed a motion to dismiss in light of Jardines, that decision was not issued until March 2013 – four months after Petitioner-Defendant's sentencing. Defense

As to counsel's alleged failure to file pre-sentence objections, defense counsel capably represented Petitioner-Defendant and filed a Sentencing Memorandum on Petitioner-Defendant's behalf. (Def.'s Sentencing Memorandum [Doc. No. 18].) In the Sentencing Memorandum, Petitioner-Defendant's counsel argued that Petitioner-Defendant should not be given an upward gun enhancement and that full consideration of Petitioner-Defendant's particularly difficult childhood should be taken into account at sentencing pursuant to § 5H1.3 of the Sentencing Guidelines. (Id. at 5-6.) There is no basis for Petitioner-Defendant's assertion that his counsel was ineffective in this regard.

_____

counsel could not have anticipated the Jardines decision. Under 2010 Eighth Circuit precedent, the use of a drug detection dog to sniff an exterior apartment door from a common hallway – the very facts in Petitioner-Defendant's case – did not constitute a "search" subject to the Fourth Amendment's prohibition on unreasonable seizures. United States v. Scott, 610 F.3d 1009, 1016 (8th Cir. 2010), cert. denied, 131 S. Ct. 964 (2011). Thus, had defense counsel filed a motion to suppress based on the search, such action would have been "fruitless and futile." See Garrett, 78 F.3d at 1303 n.11. Counsel's performance in electing to not file pretrial suppression motions is therefore not deficient. Id. Nor was any decision not to file an appeal deficient, as doing so would have directly contravened the terms of the Plea Agreement. (Plea Agreement ¶ 10 [Doc. No. 16].) In addition, Petitioner-Defendant cannot show prejudice from either of these alleged failures. Strickland, 466 U.S. at 694.

Also, this Court has found Jardines inapplicable to these very facts, concluding that an apartment hallway is not part of the curtilage, and not entitled to Fourth Amendment protection. United States v. Penaloza-Romero, 13-CR-36 (RHK/TNL), 2013 WL 5472283, at *7-9 (D. Minn. Sept. 30, 2013). Moreover, even if Jardines might apply to the facts here, the Supreme Court has held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." Davis v. United States, __ U.S. __, 131 S. Ct. 2419, 2429 (2011); see also United States v. Tschacher, 687 F.3d 923, 932-33 (8th Cir. 2012) (same), cert. denied, 133 S. Ct. 269 (2013).

To the contrary, the record reflects that the Court did consider Petitioner-Defendant's difficult childhood, among other factors, in issuing the sentence. (Sentencing Tr. at 11-12 [Doc. No. 35].)  As noted, this sentence was at the very bottom of the suggested Guidelines range.

The Court also rejects Petitioner-Defendant's allegation that he was essentially coerced into accepting the Plea Agreement.  Petitioner-Defendant alleges that his attorney made false promises, including a promise of no more than a ten-year sentence. (Motion at 7; 30, Ground 3 [Doc. No. 29].)  Again, at the plea hearing, Petitioner-Defendant indicated that he understood the possible range of punishment (Plea Hr'g Tr. at 12-17 [Doc. No. 34]), and that no promises were made to him by anyone in order to obtain a guilty plea.  (Id. at 17; 22-23.)   Petitioner-Defendant agreed that his plea was made of his own free will.  (Id. at 22.)  Petitioner-Defendant's claim of coercion due to counsel's alleged false promises "fails to overcome the 'strong presumption of verity' that attache[s] to statements made in 'open court.'" Nguyen, 114 F.3d at 704 (quoting Blackledge v. Allen, 431 U.S. 63, 74 (1977).   In addition, the Plea Agreement itself contemplated a Guidelines range of between 168-210 months – clearly in excess of ten years, even at the bottom end of the range – and further cautioned that the ultimate decision rested with the Court.  (Plea Agreement ¶¶ 7(f); 8.)  Petitioner-Defendant stated in open court that he had read the Plea Agreement.  (Plea Hr'g Tr. at 12 [Doc. No. 34].)

Finally, Petitioner-Defendant makes various assertions in his Motion that appear

unrelated to his case, or unsupported by the facts, at best. For example, in support of his argument that counsel failed to attack the enhancements, he refers to "tainted and unreliable" testimony and his counsel's failure to object to this testimony. (Motion at 24 [Doc. No. 29].) However, no such statements or "testimony" was elicited either at Petitioner-Defendant's change of plea hearing or sentencing hearing. The only sworn witness at the change of plea hearing was Petitioner-Defendant himself. (Plea Hr'g Tr. at 3 [Doc. No. 34].) The only "testimony" was in the form of colloquy between Petitioner-Defendant and the Court. Defense counsel responded to the Court's questions (id. at 6), and the Government's counsel reviewed the terms of the Plea Agreement with Petitioner-Defendant on the record. (Id. at 12-17.) There is nothing before this Court to support an allegation that any of the hearing statements were tainted and unreliable. In addition, Petitioner-Defendant asserts that "[c]ounsel, upon review of the PSI, then reviewed the Plea offering a term of up to 120 Months." (Id. at 30.) The Plea Agreement, however, while acknowledging a ten-year statutory minimum, also acknowledges an advisory guideline range of 168-210 months based on a Criminal History III level, and further recognizes that nothing contained in the Plea Agreement is binding on the Court. (Plea Agreement at ¶¶ 7(f); 8.)

Importantly, for all of the bases on which Petitioner-Defendant claims ineffective

assistance of counsel, he has failed to demonstrate prejudice.[5]  See Strickland, 466 U.S.

at 694.  Nothing in the record indicates that but for the alleged errors of counsel, he

would not have pleaded guilty and would have insisted on going to trial.  Matthews v.

United States, 114 F.3d 112, 114 (8th Cir. 1997) (holding that where the conviction is

entered based on a guilty plea, the defendant must demonstrate that "'there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial.'") (quoting Hill v. Lockhart, 474 U.S. 52, 59

(1985)).

        For all of these reasons, the Court concludes that Petitioner-Defendant's

ineffective assistance of counsel claim fails.

> ### D.    Evidentiary Hearing

        Based on the record before the Court, there is no basis for the Court to further

explore any credibility issues regarding Petitioner-Defendant's claims.  A § 2255 motion

may be dismissed without a hearing if: (1) Defendant's allegations, if accepted as true,

would not entitle him to relief; or (2) the allegations cannot be accepted as true because

-----

        [5] As the Government notes by way of example in its response to Petitioner-
Defendant's Motion, even if defense counsel had successfully argued against the
application of the two-point gun enhancement, the adjusted base offense level, combined
with Petitioner-Defendant's criminal history score, would have resulted in a Guidelines
range of between 151-188 months.  (Govt.'s Resp. at 11 [Doc. No. 36]; see also U.S.
Sentencing Guidelines Manual ch. 5, pt. A, Sentencing Table (2012)).  Because the
Court sentenced Petitioner-Defendant within that range, there is no showing of prejudice
regarding counsel's alleged failure to attack the enhancement.

they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact.  Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).  Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary.  Covey v. United States, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted).  Applying this standard to the allegations and record before the Court, the Court finds that the record here includes all such information and no evidentiary hearing is required in this case.   Moreover, Petitioner-Defendant's allegations of ineffective assistance of counsel are clearly refuted by the record.

### E.    Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability.  See 28 U.S.C. § 2253(c)(1)(B).  A court cannot grant a Certificate of Appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists."  Fleiger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing Lozado v. Deeds, 498 U.S. 430, 432 (1991) (per curiam)).  Accordingly, the Court declines to issue a certificate of appealability.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS**

**HEREBY ORDERED** that

1.      Defendant Lozano's Motion to Vacate, Set Aside or Correct Sentence

        Pursuant to 28 U.S.C. § 2255 [Doc. No. 29] is **DENIED**;

2.      No evidentiary hearing is required in this matter; and

3.      A Certificate of Appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   November 18, 2013

                                          s/Susan Richard Nelson
                                          SUSAN RICHARD NELSON
                                          United States District Court Judge